Richard P. HELWIG, et al.,
Plaintiffs–Appellees,

v.

KELSEY–HAYES COMPANY,
Defendant–Appellant.

No. 94–1942.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1995.

Decided Aug. 20, 1996.

ployees of Kelsey–Hayes, claim that the Company reduced their health care benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1001–1461 (1988). The District Court found that the Plaintiffs have a substantial likelihood of success on the merits and therefore granted them a preliminary injunction which reinstates their retiree health care coverage, pending the outcome of the case. Because this case is clearly controlled by *Edwards v. State Farm Mutual Automobile Insurance Co.*, 851 F.2d 134 (6th Cir.1988), as more fully explained below, the decision of the district court is AFFIRMED.

## I. BACKGROUND

Plaintiffs are a class of approximately 1,500 retired salaried employees of Kelsey–Hayes Company, a manufacturer of parts and components for the automobile industry. As retirees, they continue to receive some health care benefits through the Company. In 1985, and again in the early 1990s, Kelsey–Hayes instituted changes to the health care package that it provides to its retirees. Those changes are not the subject of this suit. In April 1993, the Company announced its intent to significantly increase retiree costs under the plan. Prior to January 1, 1994 retirees were not required to pay deductibles or co-payments for service. After that date, the modifications required co-payments for service, deductibles, monthly premiums and significantly increased drug co-payments. Four days after the effective date of these modifications, the Plaintiffs filed this suit to prevent the changes from taking effect.

John R. Runyan (briefed), Andrew Nickelhoff (argued and briefed), Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, MI, for Plaintiffs–Appellees.

Mark T. Nelson, Butzel Long, Detroit, MI, Kirk D. Messmer (briefed), Jay G. Swardenski (briefed), Christopher A. Johlie (briefed), Julia A. Martin (argued), Matkov, Salzman, Madoff & Gunn, Chicago, IL, Diane M. Soubly, Vercruysse, Metz & Murray, Bingham Farms, MI, for Defendant–Appellant.

Nancy E. Monarch (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Robert B. Reich, Amicus Curiae.

Before: MERRITT, Chief Judge; DAUGHTREY and OAKES,* Circuit Judges.

MERRITT, Chief Judge.

This is an appeal by the Defendant, Kelsey–Hayes Company, who seeks to overturn the granting of a preliminary injunction by the District Court. Plaintiffs, retired em-

Plaintiffs claim that they were promised certain lifetime health care benefits by their Employer, and that the employer never reserved the right to reduce or terminate their coverage. They rely on the official "Summary Plan Descriptions" (SPDs) of benefits packages which, under ERISA, the employer is required to distribute to employees. *See* 29 U.S.C. § 1022. The SPDs in effect be-

---

* The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

tween 1977 and 1990 promise certain lifetime retirement health benefits at no cost to the employee. The Defendant relies on other provisions within those SPDs that state that the master insurance agreement between the company and the insurance carrier controls the terms of the employees' benefits. They then point to provisions in the master agreements which permit cancellation by either party (the Company or the carrier). The Defendant also points to booklets and brochures (not required under ERISA) which reserve the right to modify or terminate benefits.

In 1977, Kelsey–Hayes issued a summary of its benefits plans entitled "Your Health Care Benefits As a Salaried Employe [sic] of the Kelsey–Hayes Company." Joint Appendix at 29 [hereinafter "Jt.App."]. Page nine of that summary clearly states the health coverage benefits the employees will receive upon retirement:

*KELSEY HAYES PAYS THE FULL COST FOR . . .*

. . . .

When you are retired, your Health Care coverages, except for vision, are continued without cost to you.

If you terminate employment with Kelsey–Hayes at age 65 or older for any reason other than discharge, all of your Health Care coverages, except vision care, will be continued for the rest of your life without cost to you.

*Id.* The SPD also contains the provision:

*CONTINUING INSURANCE AFTER AGE 65*

All of your Health Care coverages are continued after age 65 whether you work for Kelsey–Hayes or not, except that vision coverage is provided only while you are actively at work. However, these benefits are reduced by benefits payable under Medicare if you are enrolled for Parts A and B of Medicare.

*Id.* at 40. The SPD contains no mention of a right to modify or terminate the benefits. The 1984 SPD introduced by Plaintiffs contained similar promises, also with no mention of modification or termination rights reserved by the Company. Jt.App. at 76.

Defendant introduced various benefits brochures and SPDs, however, which included references to the agreements between the Company and the insurance carrier. For example, the cover of an early 1970's employee benefits brochure states:

This revised Brochure is intended to present a brief description of the Benefit Plans and Programs provided for salaried employees. The insurance contract or other documents which govern the administration of the Plans are available in the Industrial Relations Department and provide the complete description of these Plans and Policies. You should refer to these documents for a full description. Should there be any variance between this description and the actual Plan document, the latter will apply.

Jt.App. at 170. In contrast, during the 1990s, the Defendant distributed SPDs relating to general health care benefits which contained clauses explicitly reserving the right to modify or terminate the benefits described. For example, a 1990 SPD states, "The Company reserves the right to modify, suspend or terminate the benefits described herein at any time." Jt.App. at 488.

Defendant also introduced the cancellation clauses from each of the contracts between Kelsey–Hayes (or its parent company of the time) and the various insurance carriers who provided coverage (*e.g.,* Aetna, Blue–Cross, CIGNA, John Hancock). Those cancellation clauses all state that the Company and/or the insurance carrier have the right to cancel the policy, with the proper notice. For example, the CIGNA contract's termination clause read, "The Policyholder may cancel the policy as of any Premium Due Date by giving written notice to the Insurance company before that date." Jt.App. at 271.

The district court held that the Plaintiffs' have a substantial likelihood of success on the merits because the benefits vested at retirement and they cannot now be modified or terminated. *Helwig v. Kelsey–Hayes Co.,* 857 F.Supp. 1168, 1175 (E.D.Mich.1994). The district court reasoned that the 1977 and 1984 SPDs conflict with the insurance agreements, and that under this Circuit's decision in *Edwards,* the SPD is controlling. *Id.*

(citing *Edwards,* 851 F.2d at 136). Alternatively, the district court held that the language of the SPDs and the insurance agreements creates an ambiguity, which, under this Court's decision in *UAW v. Yard–Man, Inc.,* must be resolved in favor of the Plaintiffs. *Id.* (citing *UAW v. Yard–Man, Inc.,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984)).

## II. ANALYSIS

■■■■ The issue before this Court is whether it was reasonable for the district court to find that the Plaintiffs have a reasonable likelihood of success because, 1) the benefits promised to the Plaintiffs vested at the time they retired, and 2) the benefits were not subject to any modification or termination provision. This Court reviews the granting of a preliminary injunction under an "abuse of discretion" standard. *Tate v. Frey,* 735 F.2d 986, 990 (6th Cir.1984). In doing so, we review the merits of the case to the extent necessary to determine if the trial court exceeded reasonable discretion by granting the relief. *Id.*

### A. *Edwards v. State Farm Mutual Automobile Insurance, Co.*

In *Edwards v. State Farm Mutual Automobile Insurance, Co.,* we held that statements made in Summary Plan Descriptions are binding, and if they conflict with statements made in the Plan itself, the Summary Plan Description controls. 851 F.2d 134, 136 (6th Cir.1988). Although *Edwards* involved disability benefits, rather than welfare benefits, this Court has previously applied the principles of *Edwards* in the welfare benefit context. *See Sprague v. General Motors Corp.,* 1996 Fed.App. 0265P, 92 F.3d 1425, 1434–35 (6th Cir.1996). The Defendant in *Edwards* attempted to deny an employee disability benefits. *Id.* at 135. Under its employee benefit plan, eligibility for disability benefits was calculated by adding the employee's age to the employee's "credited service" (i.e. the amount of time the employee had worked for the company up to the date of his or her disablement). *Id.* Only those employees whose age plus amount of credited

service totalled fifty-five years or more were eligible for disability benefits. *Id.* The Summary Plan Description given to the employees by the Defendant stated that "time while on sick leave counts for plan membership and ... as credited service...." *Id.* Under the Summary Plan Description, therefore, Edwards had enough credited service to be eligible for disability benefits. *Id.* Under the definitions in the Plan document, in contrast, Edwards' time on sick leave was excluded from credited service, and therefore, he did not have enough credited service to be eligible for disability benefits. *Id.* We held that State Farm could not, in reliance on the Plan document, deny Edwards disability benefits because "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Id.* at 136.

Our decision in *Edwards* recognized the impact that a summary descriptions have on lay beneficiaries. *Id.* at 136. We noted that employees count on them to provide an accurate picture of their current benefits situation, as well as for information which will allow them to make intelligent decisions about their future benefits needs. *Id.* "Had Edwards been apprised of the Committee's interpretation of the Plan," we reasoned, "he could have made 'alternate financial plans,' to guard against the Plan's shortcomings." *Id.* (quoting *Hodgins v. Central States Southeast,* 624 F.2d 760, 761 (6th Cir.1980)). As we explained in *Edwards,* State Farm should have realized that the explicit language and the promises made in their SPD would cause unsophisticated lay employees to rely on the representations. *Id.* We held, however, that "precedent does not dictate that a claimant who has been misled by summary descriptions must prove detrimental reliance." *Id.* at 137. Instead, we concluded that it is the employer's duty to put the employees on notice of their rights under the plan, and if they fail to adequately do so, they will be precluded from enforcing Plan language which conflicts with summary description language to the detriment of their employees. *Id.* at 136–37.

Our decision in *Edwards* was also based on the statutory language itself. *Id.* at 136.

We quoted § 1022 of ERISA, which states that summary descriptions must be " 'written in a manner calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.' " *Id.* at 136 (citing 29 U.S.C. § 1022(a)(1)). In addition, we cited the legislative history of ERISA, which explains that "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets.". *Id.* (citing H.R.Rep. No. 93–533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4646). Reasoning that the summary plan provisions would be useless if the Plan documents were allowed to undermine them, and recognizing that "Congress has promulgated a clear directive prohibiting misleading summary descriptions," we declined to "undermine that legislative command" by imposing "technical requirements" on employees. *Id.* at 137 (" 'It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and them proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet.' ") (citing *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985)).

## B. Application of *Edwards*

### 1. Vesting of Benefits

■ The first issue to be addressed is whether or not the benefits in question are "vested" benefits. In other words, were the benefits complete and consummated upon the retirement of each Plaintiff such that they cannot now be divested without the consent of those to whom they belong? Until benefits have vested, employers may modify them or terminate them, whether or not they have reserved the right to do so. *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, ——, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995).

■ Under ERISA, welfare benefits, unlike pension benefits, do not automatically vest. *Id.* In addition, this Court has a rejected a *per se* rule which held that all welfare benefits vest at retirement regardless of whether a termination clause was included in the agreement between the employer and employee. *In re White Farm Equip. Co.,* 788 F.2d 1186, 1193–94 (6th Cir. 1986). Employers and employees are therefore free to set out, by agreement, welfare benefit plans which vest irrevocably at retirement. *Id.* at 1192.

■ In order to determine if welfare benefits have vested, federal courts must assess the intention of the parties. *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1298 (6th Cir.1991). In doing so, the court looks first to the "written instruments" which formed the agreement for clear manifestations of intent. *Policy v. Powell Pressed Steel Company,* 770 F.2d 609, 614 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986). The written instruments to be examined in this case are the SPDs and the master insurance agreements. The SPDs told employees that,

> When you are retired, your Health Care coverages, except for vision, are continued without cost to you.

> If you terminate employment with Kelsey–Hayes at age 65 or older for any reason other than discharge, all of your Health Care coverages, except vision care, will be continued for the rest of your life without cost to you.

Jt.App. at 39. This statement, and similar ones made in the 1984 SPD, demonstrate an intent to vest benefits in employees when they retire. *See Policy,* 770 F.2d at 614 (statement in collective bargaining agreement that provided health coverage " 'during the life of the pensioner at no cost to the pensioner' ... clearly means that the pensioner will receive health benefits for the remainder of his life, regardless of when the collective bargaining agreement expires...."). Defendant relies on the cancellation clauses of the master agreements to support its assertion that it never intended for the benefits to vest. Giving effect to the master agreement cancellation provisions,

they argue, would not violate the rule in *Edwards* that the SPDs control, because of the provisions in the SPDs themselves which designate the master agreements as controlling.

■ This attempt to bootstrap the cancellation clauses into the SPDs through the SPD provisions designating the master agreements as controlling fails for two reasons. First, the plain language of the master agreements indicates that the cancellation clauses were included merely to reserve the right of the employer or the carrier to end their commercial relationship. Therefore, as the District Court concluded, it is doubtful that the cancellation clauses are even relevant to the scope of employee benefits. Thus, even if the master agreement cancellation clauses were controlling (which, under *Edwards,* they are not), an objective look at the plain language of the documents leads to the conclusion that the Defendants intended for the rights to vest. Second, even if we assume that the cancellation clauses were intended to regulate the obligations of the employer to the employees, this Court has held quite clearly that promises made in SPDs are binding on the employer regardless of conflicting language in a master agreement. *Edwards,* 851 F.2d at 136. In *Edwards,* there was no dispute about the intent of the definitions in the Plan document, upon which the defendant sought to rely. This Court assumed that under the Plan documents, Edwards could legitimately be denied disability benefits. What mattered in *Edwards,* and what matters today, is the language actually given to the employees and upon which they could reasonably have relied. In both *Edwards* and the case at hand, the SPDs were the only documents which were written by the employer and were distributed to the employees. Just as the plaintiff in *Edwards* reasonably relied on the promises made by State Farm regarding his eligibility for disability benefits, it was reasonable for the Plaintiff employees in this case to believe that if they retired while the 1977 or 1984 SPDs were in effect, they would be entitled to the specified health benefits promised at no cost to them. By retiring from Kelsey–Hayes, they indicated their intent to accept those benefits as they were

then defined. In this circuit, under *Edwards,* Companies are held to the promises they make in their SPDs. 851 F.2d at 136.

■ As in *Edwards,* we may also turn to the legislative history of ERISA for guidance. The purpose of the ERISA legislation was to "remedy certain defects in the private retirement system" which threatened individual pension and benefits rights. H.R. Rep. 533, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4639. One of the concerns addressed in the legislation was the inadequacy of the limited data available to employees under pre-ERISA law. *Id.* at 4649. Congress sought to create disclosure requirements which would enable the individual participant to "know[ ] exactly where he stands with respect to the plan—what benefits he may be entitled to, [and] what circumstances may preclude him from obtaining benefits ..." *Id.* at 4649. Congress chose to implement its goal of full disclosure by requiring that all employers create and distribute "Summary Plan Descriptions" ("SPDs") of all benefit plans. 29 U.S.C. § 1022. The statute, cited in *Edwards,* provides that the Summary Plan Descriptions, "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). In addition, the statute requires that the Summary Plan Descriptions include information explaining "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). According to the legislative history, these statutory requirements were imposed to arm employees with enough information to enable them to enforce their rights. H.R.Rep. No. 533, *reprinted in* 1974 U.S.C.C.A.N. at 4649. Following the same reasoning we used in *Edwards,* we conclude that it would make no sense for Congress to require employers to provide clear, simple, complete descriptions of benefits plans if the employee were expected to also know and understand every clause in the voluminous, complex, and legalistic document the SPD was intended to ac-

curately describe. *Edwards,* 851 F.2d at 136–37.

■ The SPDs in this case, like all SPDs, were produced under a statutory obligation of comprehensiveness and accuracy. Kelsey–Hayes made promises of certain lifetime health benefits to retirees. Even if this court were to find that the cancellation clauses in the master agreements were originally intended to reserve the Company's right to modify or terminate employee benefits, the plain language of the contracts, the statutory language and legislative history of ERISA dictate that employers may not construct SPDs in such a manner that they mislead employees into thinking they have a right to benefits when other documents obliquely negate those rights. *See* H.R.Rep. No. 533, *supra,* at 4639, 4646, 4349; *Edwards,* 851 F.2d at 136. When making decisions about where and how long to work, employees, like the plaintiffs in this case, rely on the promises made to them, particularly when those promises are in writing. This Court has previously refused to accept employer interpretations of benefits documents where the employee was not given any notice of the adverse interpretation and had no reason to know of it. *Edwards,* 851 F.2d at 136; *Rhoton v. Central States, Southeast and Southwest Areas Pension Fund,* 717 F.2d 988, 992 (6th Cir.1983). For these reasons, we hold that the district court was reasonable in concluding that the documents indicate an intent by Kelsey–Hayes to create retirement health care benefits which would vest in the employees when they retired. Kelsey–Hayes may not now shirk the responsibilities it created by retroactively reinterpreting complex legal documents in a manner adverse to its retirees. *See id.*

## 2. Right to Modify or Terminate Vested Benefits

■ Once it is determined that the benefits promised by the Company vested in the Plaintiffs at retirement, it becomes necessary to decide what terms and conditions were properly placed on the benefits prior to the time they vested. We have held that employers may modify or terminate vested rights where their power do so was an explic-

it part of the agreement between the parties. *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1001 (6th Cir.1993); *Musto v. American General Corp.,* 861 F.2d 897, 904–06 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *In re White Farm Equip. Co.,* 788 F.2d 1186, 1189, 1192–94 (6th Cir.1986). However, this question is also controlled by *Edwards,* which held that the language of SPDs is binding, and where there is a conflict between the language of the SPD and the other official plan documents, it is the SPD which is controlling. *Edwards,* 851 F.2d at 136. Thus, unless the modification/termination provision was explicitly contained in the SPD, the benefits are not subject to such a provision.

Defendants assert that our holding in *Edwards* has been limited by two subsequent cases: *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1001 (6th Cir.1993), and *Gill v. Moco Thermal Industries, Inc.,* 981 F.2d 858, 860 (6th Cir.1992). In *Boyer,* the defendant explicitly reserved the right to modify or terminate benefits in the summary description. That case, therefore, does not apply to the situation at hand. 986 F.2d at 1001 ("[P]lan booklet provided: 'It is hoped that this Plan will be continued indefinitely, but, as is customary in group plans, the right of change or discontinuation at any time must be reserved.'"). In *Gill,* there were no SPDs at issue. Therefore, we held that an unambiguous cancellation clause in an insurance agreement between an employer and an insurance carrier was an effective reservation of the right of the employer to modify employee health benefits. 981 F.2d at 860. In that case, plaintiffs appear to have relied on the verbal assurances made to them by their employer in support of their equitable estoppel claim. *Id.* While reliance upon boiler plate cancellation clauses from insurance contracts to determine employee rights is troubling under any circumstances, it is understandable that this Court would choose to do so where the agreement is the only available written source of guidance. That is not the case here.

■ We note that in finding for the Plaintiffs, the district court relied, alternatively, on this Court's opinion in *UAW v.*

*Yard–Man,* 716 F.2d 1476, 1480–82 (6th Cir. 1983). Under *Yard–Man,* when the language in a Plan document is ambiguous, the Court may use extrinsic evidence in order to clarify the terms of the agreement. 716 F.2d at 1480–82. Thus, if an ambiguity in the SPD had been created in this case by the promises made, the reference to the master agreement, and the cancellation clause in that agreement, the court could use extrinsic evidence to determine the terms of the benefits at the time the Plaintiffs retired. *Id.* In this case, however, the language of the master agreements neither conflicts with nor creates an ambiguity in the SPD. The language of the cancellation clauses appears simply to contemplate a cessation of the commercial relationship between the Company and the insurance carrier. These clauses were, in fact, used by the Company on numerous occasions when it chose to change the insurance company with which it did business. There is no evidence that the clauses were originally intended to have some "dual" purpose of reserving the right of the Company to terminate employee benefits. Thus, *Yard–Man* is not applicable to the case at hand.

The analysis of the Defendant's purported modification/termination provisions is therefore similar to the analysis of the intent to vest benefits; the court looks to the plain language of the documents, the ERISA statute, and legislative intent. *Edwards,* 851 F.2d at 136–37; *Boyer,* 986 F.2d at 1005; *Musto,* 861 F.2d at 909–10; *White Farm,* 788 F.2d at 1191–93. As to the reservation of the right to modify or terminate benefits, the legislative history also weighs against allowing employers to promulgate SPDs which they can disavow even though they did not reserve such a right up front. Congressional intent cannot be carried out unless employers are required to adhere to the language of their own Summary Plan Descriptions. In *Edwards,* this Court refused to allow a Company to issue Summary Plan Descriptions which make all sorts of promises and then bury escape clauses in highly technical and inaccessible insurance agreements. Similarly, we can not, in this case, permit the goals of the ERISA SPD provisions to be thus undermined. Other circuits have come to

similar conclusions. *See, e.g., Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 141 (4th Cir.1993); *Heidgerd v. Olin Corp.,* 906 F.2d 903, 907 (2nd Cir.1990); *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985).

## III. CONCLUSION

In this case, the SPDs promulgated by the Defendant made clear, unambiguous promises of lifetime coverage and they contained no valid provisions reserving the right to modify or terminate the benefits conferred. Those benefits vested at the time each Plaintiff retired. Because we do not find that the SPD is ambiguous, the need for extrinsic evidence to resolve such an ambiguity is not present; therefore, we do not reach the Defendant's claim that an evidentiary hearing on the extrinsic evidence was improperly denied. For these reasons, we hold that the plaintiffs have demonstrated a reasonable likelihood of success on the merits, and therefore, the district court was reasonable in granting them a preliminary injunction. The decision of the district court is hereby AFFIRMED.