Ann CHIERA, Plaintiff,

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,**
Defendant.

No. 5:98–CV–1029.

United States District Court,
N.D. Ohio,
Eastern Division.

April 8, 1999.

Jack Morrison, Jr., Theresa Ann Tarchinski, Harry J.C. Wittbrod, Amer, Cunningham, Brennan, Akron, OH, for Ann Chiera, plaintiff.

Todd M. Haemmerle, Dennis Gerard Rehor, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for John Hancock Mutual Life Insurance Company, defendant.

## OPINION AND ORDER

GWIN, District Judge.

On November 16, 1998, Defendant John Hancock Mutual Life Insurance Company filed a motion for summary judgment to enforce the terms of an employee benefit plan arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [Doc. 14]. On December 2, 1998, Plaintiff Chiera filed a cross-motion for summary judgment [Doc. 16].

Here, the Court decides whether Plaintiff Ann Chiera is entitled to certain dismemberment benefits arising under Defendant John Hancock's group accidental death and dismemberment policy. Premier Industrial Corporation provided the John Hancock group policy to Chiera's deceased husband James Chiera as an employee benefit.[1] Premier Industrial Corporation employed James Chiera.

The Court decides the following issues: (1) whether the *de novo* or the arbitrary and capricious standard of review applies; (2) whether Plaintiff Ann Chiera's claim for her husband's loss of sight in both eyes entitles her to benefits under terms of the dismemberment policy; and (3) whether Plaintiff Chiera filed a timely claim for these benefits.

For the reasons that follow, the Court first finds that this Court should apply a *de novo* review of John Hancock's decision denying the dismemberment benefit. The Court next concludes that Plaintiff Chiera's dismemberment claim for her husband's "loss of sight in both eyes" does fall within the terms of the policy. However, the Court finds that Plaintiff Chiera is not entitled to dismemberment benefits under the policy because Chiera failed to timely file a proof of loss with Defendant John Hancock. Accordingly, the Court grants the defendant's motion for summary judgment. The Court denies Plaintiff Chiera's cross-motion for summary judgment.

---

1. Title 29, U.S.C. § 1132(a)(1)(B), outlines the civil enforcement provisions of ERISA and provides:

    (a) Persons empowered to bring a civil action
    A civil action may be brought—
    (1) by a participant or beneficiary—
    ***
    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
    ***
    29 U.S.C. § 1132(a)(1)(B). *See also Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 942 (6th Cir.1995) ("[I]n Pilot Life, the Supreme Court held that Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of claim benefits . . . .").

## I.  Facts

Premier Industrial Corporation's Akron Brass division employed Plaintiff Ann Chiera's late husband, James Chiera, in the finance department.  While in that position, Premier insured Mr. Chiera for group life insurance benefits, and accidental death and dismemberment benefits, under its employee benefits plans.  Defendant John Hancock Mutual Life Insurance Company issued the group policies. Mr. Chiera's policy gave spousal benefits to Plaintiff Ann Chiera.

On April 30, 1990, Mr. Chiera was released from The Cleveland Clinic after undergoing surgery to repair a congenital defect with his aortic valve.  Afterwards, on May 8, 1990, Mr. Chiera was admitted to the emergency room at Akron General Medical Center where physicians discovered that he suffered pericardial effusion that progressed into cardiac tamponade. Mr. Chiera went into cardiac arrest.  This cardiac arrest resulted in severe brain damage, leaving Mr. Chiera in a permanent vegetative state.  In this condition, Mr. Chiera suffered a permanent loss of vision in both eyes.  Mr. Chiera died on March 25, 1995.

Shortly after his death, Plaintiff Ann Chiera received a copy of the "Summary Plan Description" for life, accidental death and dismemberment, major medical and dental benefits.  On May 10, 1995, Chiera filed a claim with Premier for benefits under Defendant John Hancock's policy. On July 17, 1995, Premier's group insurance specialist, Ms. Kathleen Shorts, sent a letter to John Hancock.  In this letter, Ms. Shorts enclosed Mr. Chiera's original benefit plan enrollment card; a beneficiary claim form dated May 10, 1995, and signed by Plaintiff Chiera; and a copy of Mr. Chiera's death certificate, dated May 26, 1995.[2]

In her July 17, 1995, letter, Ms. Shorts informed Defendant John Hancock that Plaintiff Chiera was not entitled to benefits under the accidental death and dismemberment policy.  Ms. Shorts wrote:

> You will notice that the death certificate shows the manner of death as an accident, but our contract for the Accidental Death and Dismemberment insurance does not cover loss that occurs more than 365 days after the accident.

On or about August 1, 1995, Defendant John Hancock approved Plaintiff Chiera's claim for life insurance benefits and interest.[3]  However, Chiera argues there was no further review of claims for accidental death or dismemberment benefits.

On March 20, 1996, almost nine months after receiving her life insurance benefits, Mr. Jack Morrison, counsel for Plaintiff Chiera, sent a letter to Defendant John Hancock.  Mr. Morrison asked John Hancock to process Chiera's claim for benefits under the accidental death and dismemberment policy.  By letter dated May 6, 1996, John Hancock responded to Mr. Morrison's correspondence.  John Hancock enclosed a copy of Ms. Short's July 17, 1995, letter, and applicable provisions of the accidental death and dismemberment policy.  John Hancock explained that to be entitled to accidental death benefits, death must not occur more than 365 days after the date of the injury. Mr. Chiera's death occurred outside the 365-day limit.

In relevant part, the Summary Plan also provides full "dismemberment" insurance coverage for the loss of:

Both Hands

Both Feet

Sight of Both Eyes

One Hand and One Foot

One Hand and Sight of One Eye, or

---

2.  The death certificate was filed May 30, 1995.  The certificate describes the cause of death as an "accident" due to an "aortic valvuloplasty which failed."  The approximate date of the injury is shown as April 23, 1990.

3.  Defendant John Hancock paid Plaintiff Chiera a total of $122,000.00 in life insurance benefits, plus $1,925.00 in interest.  *See* Defendant's Exhibit A–4.

One Foot and Sight of One Eye.
Summary Plan Description at 5.

Like the Summary Plan, the Master Policy states that John Hancock will pay full dismemberment benefits for "loss of sight of both eyes." The Master Policy defines "dismemberment" as:

> Loss of hands or feet means permanent loss by severance at or above the wrist or ankle joint. Loss of sight means total and irrecoverable loss of sight.

Master Policy at 2–ADD.

The Summary Plan does not define the terms used in the Master Plan. Nor does the Summary Plan unambiguously give Defendant John Hancock or the administrator of the plan, Premier Industrial Corporation, the right to interpret undefined terms contained in the Summary Plan. However, both the Master and Summary Plans state the following policy exclusions:

> The Accidental Death and Dismemberment Insurance does not cover loss that occurs more than 365 days after the accident, nor any loss resulting from war (including undeclared war and armed aggression), suicide attempted suicide, bodily or mental infirmity, or disease, and infection other than a pyogenic infection of an accidental cut or wound, participation in or as a consequence of having participated in the committing of a felony, or any duties relating in any way to an aircraft or its operation, equipment, passengers or crew on a non-occupational basis.

Summary Plan Description at 5; Master Policy at 2–ADD. Neither the Master or Summary Plans define "infirmity."

Plaintiff Chiera now sues Defendant John Hancock pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits allegedly due under the terms of the plan.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252, 258–59 (6th Cir.1998).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

## III. Discussion

In its motion for summary judgment, Defendant John Hancock argues it is entitled to judgment because (1) Plaintiff Chiera cannot show that John Hancock's denial of benefits was "arbitrary and capricious"; (2) Plaintiff Chiera's claim for dismemberment benefits does not fall within the terms of the dismemberment plan; and (3) Plaintiff Chiera failed to give John Hancock timely written proof of loss as required by the plan.

In response, Plaintiff Chiera argues that the Summary Plan language controls and that the Court should review this case *de novo.* Chiera suggests that "loss of vision in both eyes" does fall within the meaning of "dismemberment" and that she did file a

proof of claim for these benefits "as soon as reasonably possible."

The Court considers whether to apply *de novo* or arbitrary and capricious review.

### A.

Defendant John Hancock argues that Supreme Court and Sixth Circuit precedent require this Court to apply the arbitrary and capricious standard. In making this argument, John Hancock says that the underlying insurance policy with Premier gives John Hancock discretionary authority to decide benefits eligibility. Plaintiff Chiera urges *de novo* review. Chiera suggests that the Summary Plan does not give John Hancock the authority needed to invoke arbitrary and capricious review. The Court agrees with Chiera that *de novo* review is appropriate here.

The ERISA statute does not provide a standard for reviewing benefit decisions, but the Supreme Court has held that a *de novo* standard of review applies to a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B), unless the benefit plan gives the administrator or fiduciary discretionary authority to decide eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991) (the highly deferential arbitrary and capricious standard of review applies where benefit plans give the fiduciary or administrator discretionary authority to decide eligibility). Because a determination of which standard of review applies hinges upon whether the language in the ERISA plan confers discretionary authority on the plan administrator, we must decide whether the Summary Plan or Master Plan governs.

Here, Premier Industrial Corporation elected to give its employees a Summary Plan entitled "Your Life, Accidental Death and Dismemberment, Major Medical and Dental Benefits."[4] The Introduction section of the Summary Plan states: "This booklet has been written to summarize your benefits, rights and obligations under the Premier Industrial Corporation Life Insurance, Accidental Death and Dismemberment Insurance, Major Medical and Dental Benefits. We hope you will find this information helpful and will share it with your family." The Introduction also states: "Every effort has been made to make this summary as complete as possible, however, if any differences arise between this booklet and the Group Policy or Administrative Services Agreement, the terms of the Group Policy or Administrative Service Agreement will govern."

Defendant John Hancock contends the above introductory language is sufficient to cause the terms of the Group Plan to supercede certain representations made in the Summary Plan.[5] The Court disagrees and finds that the language in the Summary Plan controls. Sixth Circuit decisions discussing summary plans support this conclusion.

The Sixth Circuit has long recognized the impact summary plans can have on plan participants and beneficiaries. *Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243, 247 (6th Cir.1996), *cert. denied*, 519 U.S. 1059, 117 S.Ct. 690, 136 L.Ed.2d 613 (1997). In *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988), and in *Helwig*, 93 F.3d at 247–48, the Sixth Circuit held that "statements contained in a summary plan are binding and if such statements conflict with those in the plan itself, the summary plan shall govern." *Edwards*, 851 F.2d at 136;[6] *Helwig*, 93

---

4. *See* Plaintiff Exhibit 2.

5. *See* Defendant's Reply Brief and Brief in Opposition to Plaintiff's Cross–Motion for Summary Judgment at 6, fn. 1.

6. In *Edwards*, an employee benefit plan claimant sued alleging he had been misled by the statements made in the summary descrip-

tion of his retirement plan. Finding that the employee was not required to prove detrimental reliance, the Sixth Circuit said that "since the [plan] had elected to summarize its Plan in lieu of providing its employees, including Edwards, with the entire text of the Plan, the court is constrained to consider the impact of the Summary presentation upon Edwards and similarly situated lay beneficiaries." *Id.* at

F.3d at 249–50.[7]   The holdings in these cases remain controlling law in this Circuit, limited only slightly by *Sprague v. General Motors Corp.,* 133 F.3d 388, 400–02 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998).[8]

The legislative history of ERISA also supports the Sixth Circuit's general rule that summary plans control when there is a conflict with the group plan.   Title 29, U.S.C. § 1022(a)(1), requires that benefit plans provide summary descriptions that are "written in a manner calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."   29 U.S.C. § 1022(a)(1); *Helwig,* 93 F.3d at 248; *Edwards,* 851 F.2d at 136.[9]   This language shows Congress's intention to "create disclosure requirements which would enable the individual participant to 'know[ ] exactly where he stands with respect to the plan—what benefits he may be entitled to, [and] what circumstances may preclude him from obtaining benefits....' " *Helwig,* 93 F.3d at 249 (citation omitted).

The legislative history of ERISA explains that "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." *Id.* at 248 (citing H.R.Rep. No. 93–533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4646).

Applying the above standards, the Court concludes that the Summary Plan distrib-

---

135–36.   The *Edwards* court reached this conclusion "despite language in the text of the full plan which conflicted with the language of the summary plan." *Id.* at 136.   The court stated:

> "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet."

*Id.* (quoting *McKnight v. Southern Life and Health Ins.,* 758 F.2d 1566, 1570 (11th Cir. 1985)).

7.   In *Helwig,* retired employees sought a preliminary injunction against their former employer claiming the employer had reduced their health care benefit in violation of ERISA.   The employees claimed that the employer violated clear promises about lifetime coverage in the summary plan descriptions, and that the descriptions contained no language preserving the employer's right to modify or terminate benefits.   The Sixth Circuit affirmed the district court's imposition of the injunction, following *Edwards:*

> In *Edwards v. State Farm Mutual Automobile Insurance, Co.,* we held that statements made in Summary Plan Descriptions are binding, and if they conflict with statements made in the Plan itself, the Summary Plan Description controls.   851 F.2d 134, 136 (6th Cir.1988).   Although *Edwards*

involved disability benefits, rather than welfare benefits, this Court has previously applied the principles of *Edwards* in the welfare benefit context.   *See Sprague v. General Motors Corp.,* 92 F.3d 1425, 1434–35 (6th Cir.1996).

> \* \* \*

> Our decision in *Edwards* recognized the impact that a summary descriptions [sic] have on lay beneficiaries.   *Id.* at 136.   We noted that employees count on them to provide an accurate picture of their current benefits situation, as well as for information which will allow them to make intelligent decisions about their future benefits needs.   *Id.*

*Helwig,* 93 F.3d at 247.

8.   In *Sprague,* the Sixth Circuit stated that the principal announced in *Edwards* does not apply to summary plans that are silent on issues otherwise contained in the full plan.   The circuit court declined "to apply the judge-made rule of *Edwards* in such a way as to augment the detailed disclosure provisions of the [ERISA] statute." *Id.* at 401–02.

9.   In *Helwig,* the Sixth Circuit reiterated that under *Edwards,* "it is the employer's duty to put the employees on notice of their rights under the plan, and if they fail to adequately do so, they will be precluded from enforcing Plan language which conflicts with summary description language to the detriment of their employees." *Id.* at 247 (quoting *Edwards,* 851 F.2d at 136–37).

uted by Premier to its employees governs any direct conflicts with the master group plan, absent issues where the summary plan is silent.[10]

■ Having decided this, the Court next determines whether the Summary Plan contains language that "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. If so, the Court will apply the arbitrary and capricious standard of review.

■ Under 29 U.S.C. § 1102(a)(1), "[e]very employee benefit plan ... shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." Title 29, U.S.C. § 1002(16)(A)(i) defines a "plan administrator" as "the person so designated by the terms of the" plan. By contrast, a "plan sponsor" is a separate defined term for the employer who establishes an employee benefit plan. 29 U.S.C. § 1002(16)(B). A plan sponsor may become a plan administrator only if the plan does not designate an administrator. 29 U.S.C. § 1002(16)(A)(ii). However, a designated plan administrator can also be the plan sponsor. *See In re New Center Hosp.*, 200 B.R. 592, 593 (E.D.Mich.1996) (under ERISA plan, a hospital was a plan sponsor and specifically designated plan administrator); *but see Matter of Esco Manufacturing Co.*, 50 F.3d 315, 316 (5th Cir.1995) (employer was only sponsor of its pension plan, not plan administrator, and thus lacked authority to terminate plan under ERISA's statutory provisions).

In Chiera's case, the Summary Plan specifically designates Premier Industrial Corporation as the plan administrator. Under a section of the Summary Plan entitled "Summary Plan Description," it states:

The Plan Administer is: Corporate Insurance Department

  Premier Industrial Corporation

  4500 Euclid Avenue

  Cleveland, Ohio 44103(216) 391–8300

The Plan Administrator has authority to control and manage the operation and administration of the Plan and is the agent for service of legal process.

Summary Plan at 23.

This section also outlines the "Claims Procedure." The Summary Plan provides: This booklet outlines requirements for giving notice and proof of claim to the John Hancock Life Insurance Company. If a claim is denied, in whole or in part, the denial will be submitted to you in writing setting forth the following:

1. The basis for denial of the claim;

2. the Plan provision(s) upon which the denial is based;

3. a description of any additional information required of you or your dependants; and

4. an explanation of the procedure for reviewing the claim under the Plan.

Summary Plan at 23–24.

The evidence shows Premier to be plan administrator. This evidence further shows that although John Hancock has authority to process claims, it does not have authority to decide benefit eligibility or to construe the terms of the plan.

Other language in the Summary Plan supports this conclusion. Under the section entitled "Your Accidental Death and Dismemberment Insurance," the Summary Plan describes that claimants must give proof of loss to John Hancock. It states:

Proof of Loss: John Hancock must be given written proof of the loss for which the claim is made. The proof must cover the occurrence, character and extent

---

**10.** *See Sprague,* 133 F.3d at 401 ("[t]he principal announced in Edwards does not apply to silence.... An omission from the summary plan description does not, by negative impli- cation, alter the terms of the plan itself.... The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes.").

of that loss. It must be furnished within 90 days after the date of the loss, except that a claim will not be considered valid unless the proof os furnished within this time limit. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished with as soon as reasonably possible.

Summary Plan at 5. Defendant John Hancock urges the above language gives it discretionary authority to decide benefit eligibility and to construe terms of the Plan.

Although the Summary Plan does grant John Hancock authority to process and pay eligible claims for insurance benefits, the Summary Plan expressly identifies Premier as the plan administrator, not John Hancock.[11] Under *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 it is appropriate to apply the highly deferential arbitrary and capricious standard of review "only when the plan grants the *administrator* authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*[12]

In the instant case, Defendant John Hancock is not the designated plan administrator or fiduciary. Accordingly, its authority under the Plan is not sufficient to warrant review under the arbitrary and capricious standard.

Having decided to review this cause *de novo*, the Court next considers whether Plaintiff Chiera's dismemberment claim falls within the terms of the policy.

**B.**

Defendant John Hancock says one reason it denied Plaintiff Chiera's claim for benefits was that Mr. Chiera's loss of sight in both eyes did not constitute "dismemberment" under the terms the policy. Here, John Hancock relies on the definition of dismemberment as stated in the master policy: "Loss of hands or feet means permanent loss by severance at or above the wrist or ankle joint. Loss of sight means total and irrecoverable loss of sight." Master Plan at 2–ADD. John Hancock argues that Mr. Chiera did not suffer a permanent loss as required under the policy. Instead, John Hancock suggests Mr. Chiera's loss of sight was the "product of severe brain damage"—a condition that falls under the "disease or infirmity" provision of the policy's exclusion clause.[13] The Court disagrees.

Plaintiff Chiera gives evidence that her husband's loss of sight and subsequent death was the result of an accident. First, the death certificate shows the cause of death was due to an accident caused by a failed aortic valvuloplasty.[14] Second, Plaintiff Chiera gives the affidavit of cardiologist Charles Blatt, M.D. In his affidavit, Dr. Blatt states the following:

Based upon my training and experience in the field of medicine and based upon my review of Mr. Chiera's medical records as well as my examination of Mr. Chiera, I can say to a reasonable degree of certainty that Mr. Chiera suffered from anoxic encepholopathy which left him in a permanent vegetative state and

**11.** *See Perry v. Simplicity Eng'g.,* 900 F.2d 963, 965 (6th Cir.1990) (stating that benefit plan was to be reviewed de novo unless plan "expressly gives plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms.").

**12.** John Hancock says this Court should apply the same standard that was applied in several Sixth Circuit cases, including *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376 (6th Cir.1996); *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550 (6th Cir.1998); and *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir. 1991). Although analogous to the instant

case, a review of these decisions shows that unlike the current case, the insurance provider also was the designated "plan administrator." *See* Plaintiff's Exhibit 2, Summary Plan, "Definitions for the Purpose of the Plan" at 21.

**13.** Both the Summary Plan and Master Plan exclude benefit coverage for any loss caused by "disease, infirmity or treatment of same." Summary Plan Description at 5; Master Policy at 2–ADD.

**14.** *See* Death Certificate dated May 26, 1995, at boxes 30, 32, 33d.

that as a consequence of his permeant vegetative state, Mr. Chiera suffered a loss of vision or sight in both eyes.

\*    \*    \*    \*    \*    \*

... Mr. Chiera's anoxic encepholopathy with the resultant permanent vegetative state and associated loss of sight was a result of medical negligence and not the result of a disease or infirmity or treatment of a disease or infirmity.

Blatt Affidavit at ¶¶ 4 –5.

Considering this evidence, the Court concludes that Mr. Chiera's loss of sight in both eyes was not the result of disease or infirmity. The Court further finds that Mr. Chiera's loss of sight occurred within 365 days of the accident and was permanent. The death certificate again supports this conclusion, showing the approximate date of the accident to be April 23, 1990.

Accordingly, the Court finds that Plaintiff Chiera's claim for dismemberment benefits (based on "loss of sight in both eyes") does fall within the policy coverage provisions of either the Summary Plan or Master Policy. Having decided this, the Court next considers whether Plaintiff Chiera made a timely claim for these benefits.

### C.

▇ Upon review of the record, the Court concludes that Chiera did not file a proof of loss for accidental death or dismemberment benefits "as soon as reasonably possible." Accordingly, Plaintiff Chiera is not entitled to benefits.

The record shows that Mr. Chiera became disabled on or about April 23, 1990, and remained in a vegetative state for approximately five years, until his death in March 1995.[15] Plaintiff Chiera completed a beneficiary claim form on May 10, 1995. This form was later forwarded to Defendant John Hancock on July 17, 1995, accompanied by a letter from Premier's Ms. Shorts, a claim form, and certified death certificate. Plaintiff Chiera says that this was the first time she presented her claim for accidental death and dismemberment benefits and that she timely filed a claim. Chiera also argues that she made John Hancock aware of her accidental death and dismemberment claim by way of several letters written by Attorney Jack Morrison, Jr.

Collectively, the record evidence shows that although Plaintiff Chiera did timely file a written proof of claim for life insurance benefits, she did not file a timely written proof of claim for accidental death and dismemberment benefits. First, the Beneficiary Claim Form [16] and Group Policyholder's Statement show that on July 17, 1995, Premier only submitted a claim for life insurance benefits. The Policyholder's Statement shows a claim for $122,000.00

---

15. The Court notes certain inconsistencies in the record regarding the actual date of Mr. Chiera's disability. The death certificate shows the date of injury as April 23, 1990. However, the Group Policy Statement shows the date Mr. Chiera last worked as April 30, 1991, over a year later. The same form shows Mr. Chiera's original date of insurance with John Hancock as May 1, 1990, which if true, possibly places Mr. Chiera outside the scope of accidental death or dismemberment coverage, since the injury occurred seven days earlier on April 23, 1990. *See* Defendant's Exhibit A–2, Group Policy Statement under "Employee Data," dated July 17, 1995, and signed by Kathy Shorts and Charlotte Kawczk. *See also* the July 17, 1995 letter from Kathy Shorts to Ms. April Brown of John Hancock, stating: "As you will notice, Mr. Chiera has been disabled since April 30, 1991 . . . . ." Defendant's Exhibit A–1.

Although these inconsistencies do not alter John Hancock' liability for life insurance benefits, they could affect Chiera's claims for accidental death and dismemberment benefits. Because the Court finds that Plaintiff Chiera's claims were not otherwise timely filed, we need not address this issue.

16. The beneficiary claim form, or part thereof completed and signed by Ann Chiera on May 10, 1995, does not specify the type of insurance benefits claimed. Instead, this form only shows a notation (sticker) that $122,000.00 plus interest of $1,925.26 was paid. This corresponds to the amount of life insurance benefits Plaintiff Chiera received. *See* Defendant's Exhibit A–4 (August 1, 1995 letter from John Hancock approving life insurance benefits).

(full benefits) under "Basic Life." Also, the section of the Statement asking for "accidental death claim information" was left blank, with no date of accident or incident specified.

Second, the July 17, 1995, letter from Ms. Shorts limits Plaintiff Chiera's claim to life insurance benefits. Ms. Shorts writes that the "Accidental Death and Dismemberment insurance does not cover loss that occurs more than 365 days after the accident." [17] This evidence shows that Plaintiff Chiera did not make a claim on or before July 17, 1995.

Other evidence suggests that Plaintiff Chiera did not file a claim for these benefits until, at the earliest, March 20, 1996, almost one year after Mr. Chiera's death. On March 20, 1996, Attorney Jack Morrison wrote a generic letter to Defendant John Hancock asking John Hancock to process Plaintiff Chiera's accidental death and dismemberment benefits. Mr. Morrison's letter assumes that Plaintiff Chiera had made a proper claim for accidental death and dismemberment benefits under the policy. A claim form (new or old) identifying a claim for accidental death or dismemberment benefits, did not accompany Mr. Morrison's letter.

By letter of May 6, 1996, Defendant John Hancock responded to Attorney Morrison. In this letter, John Hancock states that a claim for accidental death benefits had not been submitted. Edward Sweeney, Senior Claim Approver, writes:

> I enclosed a copy of a letter from Kathleen Shorts, Premier Industrial Corporation, explaining *why a claim was not being submitted* for Accidental Death Benefits and a copy of hte [sic] Accidental Death Provision from the Group Policy.
>
> As you can see, the loss must occur not more than 365 days after the injury occurred. The death certificate states

the injury occurred on about April 23, 1990 and insured died March 25, 1995. Therefore, Accidental Death Benefits are not payable.

> We wish our reply could have been more favorable, but under the circumstances this is not possible. All rights reserved.

Defendant's Exhibit A–6 (emphasis added).

This evidence, together with Ms. Shorts' July 17, 1995, letter and accompanying Group Policy Statement, shows that Premier, the plan administrator, and not John Hancock, decided not to submit a claim for accidental death benefits. More important, this evidence (specifically John Hancock's letter) should have alerted Chiera that Premier had not filed a claim for *accidental death* benefits or a claim for *dismemberment* benefits, as these are covered under the same policy provisions.

In concluding that Plaintiff Chiera, via Premier, did not file a timely claim for accidental death and dismemberment benefits, the Court also finds the record lacks evidence that any efforts were made to file a timely claim for these benefits after Defendant John Hancock sent Chiera's attorney its May 6, 1996, letter. Furthermore, although Plaintiff Chiera's complaint in this action refers to Chiera's claims for accidental death benefits, the complaint does not demand payment for unpaid dismemberment benefits.[18]

█ Considering these facts in the light most favorable to Plaintiff Chiera, the Court must conclude that Plaintiff Chiera did not timely file claims for accidental death and dismemberment benefits. The record lacks evidence showing that Plaintiff Chiera presented a written proof of claim for accidental death and dismemberment benefits any time prior to the date of the complaint in this action—March 26, 1998. Assuming that John Hancock took the filing of the complaint as a written proof of claim for both accidental death

---

17. *See* Defendant' Exhibit A–1 (July 17, 1995 letter).

18. *See* Complaint, ¶ 8 stating: "Defendant rejected Plaintiff's claim for accidental death

benefits, and although demand thereof has been made by Plaintiff, Defendant has failed and refused to pay Plaintiff's claim or any part thereof."

and dismemberment benefits, the claim falls outside 365 days from the accident, as required by the policy. Alternatively, the Court finds that Plaintiff Chiera's claim for benefits, filed three years after Mr. Chiera's death, was not filed "as soon as reasonably possible." [19]

Plaintiff Chiera argues that even if Defendant John Hancock did not receive a timely written proof of claim, Chiera's delay in filing did not prejudice John Hancock. The Court disagrees.

After reviewing case law identifying what constitutes "unreasonable delay" in filing a claim, this Court concludes that filing a claim three or more years after the date of injury, as here, is unreasonable as a matter of law. *American Employers Ins. Co. v. Metro Reg., Transit Auth.,* 12 F.3d 591, 593 (6th Cir.1993) (finding in commercial liability context a two-year delay to be unreasonable as a matter of law); *Ruby v. Midwestern Indemnity Co.,* 40 Ohio St.3d 159, 161, 532 N.E.2d 730 (1988) (finding in uninsured motorist context an eleven-month delay to be unreasonable as a matter of law).

In the *American Employers Insurance* case, the Sixth Circuit examined Ohio case law and defined a policy regarding "unreasonable delay" in filing insurance claims. Stating that though reconciling the language in all Ohio opinions "was not possible," the court set forth a general rule:

> "[R]easonable ... must be determined in light of all of the surrounding facts and circumstances; ... [o]ne of the facts and circumstances to be considered is any prejudice that may have resulted from delay on the part of the insured— and 'unreasonable' delay can give rise to a rebuttable presumption of prejudice; [and] ... [w]here it has been determined, with or without the use of such a presumption, that the insured failed to meet a condition as to the giving of

notice within a reasonable time, the insured is not entitled to recover on the contract of insurance."

12 F.3d at 597.

Here, Plaintiff Chiera agreed to give John Hancock notice of a claim within 365 days of the injury, or alternatively, "as soon as reasonably possible." By failing to do so, the plaintiff deprived John Hancock of any meaningful opportunity to promptly investigate the facts supporting these claims. *Ruby,* 40 Ohio St.3d at 161, 532 N.E.2d 730 (stating "[u]nreasonable delay in giving of notice may be presumed prejudicial to insurer absent evidence to the contrary.").

## IV. Conclusion

For the reasons herein, the Court concludes that Plaintiff Chiera failed to file a timely claim for accidental death and dismemberment benefits as required by the terms of the policy and explained in the Summary Plan. Accordingly, the Court grants Defendant John Hancock's motion for summary judgment on plaintiff's claims. The Court denies Plaintiff Chiera's cross-motion for summary judgment.

IT IS SO ORDERED.

## ORDER

The Court has entered its opinion and order of decision in the above-captioned case. For the reasons therein, the Court grants Defendant John Hancock's motion for summary judgment on plaintiff's claims [Doc.14]. The Court denies Plaintiff Chiera's cross-motion for summary judgment [Doc. 16].

Accordingly, this action is terminated pursuant to Fed.R.Civ.P. 58.

IT IS SO ORDERED.

---

**19.** The parties acknowledge that this Court initiated a telephone conference to determine whether the record in this case was complete with regard to Ms. Chiera's dismemberment claim. On or about December 16, 1998,

Plaintiff Chiera gave Defendant John Hancock a written claim for dismemberment benefits. John Hancock denied the claim on or about January 14, 1999.