**James J. BERTRAM, et al., Plaintiffs,**

v.

**NuTONE, INC., et al., Defendants.**

**No. 1:99CV218.**

United States District Court,
S.D. Ohio,
Western Division.

July 13, 2000.

958

Lee Hornberger, Cincinnati, OH, for James J Bertram, Paul Bingham, James R Burton, Rosemary C Carpenter, James T Catanzaro, Robert L Collier, Robert E Cox, Dale N Deible, Patricia I Francis, Paul D Gumm, Robert-Hoffman, Georgia Howard, Gary T Huber, David B Jenkins, Alva A Johnson, Robert E Johnson, Richard Kirkpatrick, Hank F Leesemann, Donna W Mancini, Ernest W Marksberry, James L McFarland, Jane Moore, Troy W Napier, Howard M Peacock, Harold Pettit, Kerby J Smith, Beual Stamper, Gertrude G Stewart, William J Tomlin, Ralph Vaught, Ray C Vinup, William A Wilburn, Jr, Jerry O'Brien.

Shelley Baber Jones, Benesch Friedlander Coplan & Aronoff, Cincinnati, OH, Brent R Canning, Hinckley Allen & Snyder LLP, Providence, RI, Donald James Mooney, Jr., Ulmer & Berne, Cincinnati, OH, for NuTone Inc.

Shelley Baber Jones, Benesch Friedlander Coplan & Aronoff, Cincinnati, OH, Donald James Mooney, Jr., Ulmer & Berne, Cincinnati, OH, for Broan–NuTone Group, Voluntary Retirement Incentive Program A.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court for disposition on the merits. The Court has before it defendant's motion for summary judgment (doc. 30) and the parties memoranda, proposed findings of fact and conclusions of law, and supporting documents.

### Procedural History

Plaintiffs, former employees of NuTone, Inc., filed a verified complaint for injunctive and declaratory relief and damages, including preliminary injunction, on March 26, 1996 (doc. 1). On January 21, 2000, the Court consolidated the trial on the merits with the hearing on the preliminary injunction motion and denied the motion. The parties subsequently filed supplemental briefs on the merits which are now before the Court. Defendants also filed their motion for summary judgment.

Plaintiffs allege that they accepted early retirement from NuTone in 1991 in reliance on NuTone's representations that, as retirees, they would be provided with health and other insurance benefits equal to those of active NuTone employees. Plaintiffs contend that on or about March 1, 1999, NuTone informed plaintiffs that their health insurance benefits would be eliminated effective May 31, 1999. The health benefits of active employees have not been eliminated. Plaintiffs also assert that defendants recklessly or knowingly made false and misleading material statements of fact on which plaintiffs relied to their detriment; that defendants were fiduciaries with respect to the provision of retirement and welfare benefits to plaintiffs; and that defendants modified the health insurance benefits awarded to plaintiffs notwithstanding the failure to set forth a procedure for amending the plan providing such benefits or for identification of persons who have authority to amend such plan.

Based on these allegations, plaintiffs bring the following claims for relief: (1) First Claim for Relief: Defendants' conduct violates the terms of the retirement plan offered to early retirees and constitutes a breach of written and implied contract pursuant to federal common law and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., as amended; (2) Second Claim for Relief: The modifications to retiree benefits implemented by defendants are barred by the doctrine of promissory estoppel pursuant to federal common law and ERISA; (3) Third Claim for Relief: The modifications to plaintiffs' benefits announced by defendants are barred by the doctrine of equitable estoppel pursuant to federal common law and ERISA; (4) Fourth Claim for Relief: Defendants breached their fiduciary responsibilities to plaintiffs under ERISA; (5) Fifth Claim for Relief: Defendants' conduct violated the terms of an earlier administrative decision issued by defendants and constitutes a breach of written and implied contract pursuant to federal common law and ERISA; (6) Sixth Claim for Relief: Defendants' conduct violates rights guaranteed to plaintiffs by ERISA; and (7) Seventh Claim for Relief: Defendants' conduct violates rights secured to plaintiffs by ERISA, 29 U.S.C. § 1102(b)(3).

Plaintiffs seek declaratory and injunctive relief requiring defendants to provide them with health insurance benefits equal to those of active employees, prohibiting NuTone from disobeying an administrative decision which it previously issued, and prohibiting defendants from amending plaintiffs' retirement program without setting forth in the plan a procedure for amending such plan and for identifying the persons who have the authority to amend the plan. Plaintiffs also request an award of compensatory damages.

Defendants allege that plaintiffs may not pursue their claims in federal court because they have not attempted to participate in the administrative review process. Defendants also contend that plaintiffs' arguments must fail on the merits. Defendants allege that plaintiffs' claims for breach of contract, promissory estoppel,

equitable estoppel, and breach of fiduciary duty are essentially the same claims, i.e., that defendants agreed to provide them with certain vested health benefits under the 1991 early retirement program and the 1994 administrative decision interpreting that program: therefore, defendants may not now amend plaintiffs' benefits without amending the benefits of every other Nu-Tone employee. Defendants contend that plaintiffs cannot demonstrate that they held vested benefits in the NuTone Health Plan. Defendants rely on the decision of the United States Court of Appeals for the Sixth Circuit in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir.), *cert. denied,* 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998) in support of their arguments that NuTone expressly reserved the rights to modify and/or terminate the NuTone Health Plan as set forth in the Plan, the Plan Summaries, the 1991 early retirement program, and the October 14, 1994 administrative decision; the 1991 early retirement program and the October 1994 decision do not modify or alter the Plan, and in fact the 1994 decision reiterates that retirees will be subject to the same changes as active employees, which may be either positive or negative; and NuTone unambiguously reserved its right to amend the Plan, plaintiffs' reliance on contrary statements was not reasonable, and plaintiffs cannot establish any injury sustained by relying on the alleged promise since all non-union retirees are subject to the same change. Defendants also rely on *Sprague* for the proposition that NuTone did not act as a fiduciary in deciding to change its health insurance policies and plaintiffs cannot complain that NuTone misled them or breached a fiduciary duty since NuTone expressly reserved its right to alter the benefits. Defendants sum up their position on the applicability of *Sprague* as follows:

> The teachings of *Sprague* are clear. Welfare plans are not subject to vesting requirements and vesting will not be implied. Where a health benefits plan expressly reserves the power to amend the benefits afforded by the plan, claims of breach of express and bilateral contract, promissory and equitable estoppel, and breach of fiduciary duty cannot be maintained. All of the major arguments advanced by plaintiffs have been rejected by *Sprague*.

(Doc. 6, p. 10). Defendants also point out that it is immaterial whether NuTone promised them benefits for life or the same benefits as active employees, since plaintiffs cannot establish that NuTone irrevocably promised a certain level of benefits. Defendants contend that plaintiffs do not allege that NuTone hid benefits to which they were entitled and that NuTone made no statements to plaintiffs which were in conflict with the then existing plan.

Defendants also allege that NuTone is treating plaintiffs the same as active employees since both groups no longer receive medical insurance under NuTone's Health Plan during retirement, and NuTone never promised the same medical coverage for active and retired employees. Defendants allege that this is made clear under the 1991 early retirement program ("At age 65, you will be eligible for coverage under a Medicare supplemental plan on a contributory basis") and the 1994 decision by the Benefits Committee ("Window Retirees will be eligible to participate in the same insurance plans as active employees ... until the time the Window Retiree becomes eligible for Medicare (or any program substituting for Medicare))."

### Findings of Fact

(1) Plaintiffs are former employees of NuTone who retired pursuant to an early retirement package offered by NuTone on July 12, 1991.

(2) NuTone is a Delaware corporation doing business in Cincinnati, Ohio.

(3) From 1985 until July 25, 1994, James A. Rankin was president and chief executive officer of NuTone. In early 1991, Williams Holdings (Williams) purchased NuTone. Following the sale, Rankin remained the president

and CEO of NuTone until July 25, 1994.

(4) Following the NuTone purchase, Williams and Rankin negotiated separation packages for senior NuTone employees. Rankin negotiated with Williams to obtain a separation package that would include enhanced benefits, including health insurance. In early June 1991, Williams accepted the proposal of offering a comprehensive voluntary retirement package to the prospective retirees. An important part of the package would be continued health insurance for the early retirees with benefits being the same as for active employees and the early retirees receiving the same changes in their health insurance benefits as the active employees would receive in the future. Rankin told Williams that he would never be able to "sell" a separation package that did not include continuing health insurance until either death or Medicare eligibility, and Williams eventually informed Rankin that it agreed with this approach. Williams authorized NuTone to offer a Voluntary Retirement Incentive Program (the Program) which would include the same health insurance benefits for the early retirees as for active employees, with the limitation that early retirees' benefits could be modified only if benefits for active employees were modified in the same manner.

(5) It was Rankin's intent in negotiating the prospective program with Williams that the 1991 early retirees' health insurance would be the same as for active employees until they became age 65, when they would receive insurance supplemental to Medicare, and the only changes that would be made would be the same as those made for active employees.

(6) The Program was offered to employees who had thirty or more years of service with NuTone, excluding the hourly collectively bargained employees and outside sales personnel. The offer included an earlier retirement pension than had previously been provided to these individuals as employees of NuTone, plus severance pay.

(7) As part of the 1991 Program, NuTone offered medical benefits under the NuTone Health Plan. In July 1991, NuTone sent a letter to individuals who met the eligibility criteria for the Program describing the specifics of the Program. The letter stated, in pertinent part, as follows:

NuTone, Inc. is offering a Voluntary Retirement Incentive Program . . .

\*\*\*

This letter is intended to provide you with the specifics of this Program.

SPECIAL BENEFITS PROVIDED UNDER THE PROGRAM . . .

A. MEDICAL/LIFE

If you elect to retire under the provisions of this Program, you may also be eligible for continued benefits under the medical and life insurance programs provided by NuTone as follows:

*Medical.*

If currently enrolled in the Company-sponsored medical plan you will be eligible to continue such coverage. You will be required to make a contribution towards such coverage at the same rates charged to active employees.

At age 65, you will be eligible for coverage under a Medicare Supplement Plan on a contributory basis.

From time to time the Company reviews the benefit features and contribution rights under the Medical Plan and may make appropriate changes.

(8) Under the 1991 Program, there is a distinction made between the benefits to be provided to active employees and those to be provided to retired employees. At age 65, employees were eligible for a "supplemental plan on a contributory basis."

(9) Health Plan Summaries were distributed to the employees to explain the benefits under the Plan. These summaries contain clear reservations of NuTone's right to change the Plan. The 1991 summary states:

Your Employer hopes to continue the Plan indefinitely but, as with all group plans, the Plan may be changed or discontinued with respect to all or any class of employees.

(10) NuTone had a mass meeting for the prospective window period retirees in the company cafeteria in 1991. NuTone selected Marge Poole of the Human Resources Department to explain the Program to the prospective retirees. One of the prospective retirees specifically asked Poole about health insurance and whether there could be changes in the window period retirees' health insurance. Poole specifically indicated that the window period retirees would have the same health insurance as the active employees and that the only changes that would be made would be the same as for active employees.

(11) After the July 12, 1991 letters were sent to prospective retirees, the prospective retirees discussed the health insurance issues with Rankin. On behalf of NuTone, Rankin specifically made representations to the prospective retirees. Prospective retirees asked him about the possibility of the health insurance plan changing and Rankin consistently told them, intending that they would believe him and rely on him, that if there were any changes for their health insurance, such changes would be exactly the same as for the active employees and that as long as the active employees had health insurance, the window period retirees would likewise have health insurance until they were 65 and then they would get supplemental insurance from NuTone. Rankin gave these answers based upon the promise that had been made to him by Williams and based upon his understanding of the promises he had made in the July 12, 1991 Program letters.

(12) In 1991, plaintiffs accepted the Program offer and took early retirement in reliance upon NuTone's representations.

(13) In 1994, plaintiffs filed an administrative complaint with the Plan Administrator, the Employee Benefits Committee, expressing concern about the ability of the Window Retirees to participate in an HMO option made available to active employees.

(14) On October 14, 1994, the plan administrator issued an amended decision concerning the issues raised by plaintiffs. The decision stated in part as follows:

The Committee's amended decision is to interpret the Plan and the July 12, 1991 Mr. Rankin letter.
***

The Committee interprets the plan to mean that Window Retirees will be eligible to participate in the same insurance plans as active employees, which includes the same plan design, same benefit levels and same contribution levels, until the time the Window Retiree becomes eligible for Medicare (or any program substituting for Medicare). These plans are subject to change at NuTone's discretion, and insurance for the Window Retirees will be subject to the same changes, which may be either positive or negative.
***

We also discussed the Medicare Supplement Plan. The Committee interprets the plan to mean that when a Window Retiree becomes eligible for Medicare (or its substitute), a Medicare Supplement Plan will be offered by NuTone on a contributory basis.

(15) On or about March 1, 1999, NuTone informed plaintiffs that their health

insurance and life insurance benefits would be eliminated effective May 31, 1999. NuTone offered to make a one-time payment of $1,800 on or about May 31, 1999 to retired employees. Current employees were also informed that they would not receive health insurance benefits in retirement.

(16) These changes will result in substantially higher costs for health insurance and for health care than the costs incurred by active employees. The changes will also result in a level of benefits that is lower than, and not equal to, that accorded active employees.

(17) Rankin knew in 1991 while making the above representations that in making their decisions about retiring, plaintiffs were relying on the commitment that health insurance would be provided to them on the same terms as it was to be provided to active employees. Rankin knew in 1991 that substantially all, if not all, of the window period retirees were retiring in reliance on the commitment and representation that they would have the same health insurance benefits as active employees until they turn age 65, and they then would have insurance supplemental to Medicare, and that the only changes that would be made would be identical to those, if any, made for the active employees.

(18) The Health Plan Summary in effect in 1993 stated:

As always, NuTone Inc. reserves the right to change, modify, suspend temporarily or discontinue any benefit, plan or program described in this booklet.

(19) The Health Plan Summary in effect in 1998 stated:

NuTone, Inc. has established this *Plan* with the intention of maintaining it for an indefinite period of time. However, NuTone, Inc. acting through the *Plan's* Benefit Committee, reserves the right, at its sole discretion:

\* to alter, amend, or terminate this *Plan,* in whole or in part, at any time.

\* to alter, amend, or terminate retiree benefits of this *Plan,* in whole or in part, at any time.

\* to change, increase, or decrease *Plan* contributions (if any), in whole or in part, at any time.

## Standard of Review

Neither party has addressed the appropriate standard of review to be applied in this case. Although the Court ordered the parties to brief the merits of the action, defendants have instead filed a motion for summary judgment. The United States Court of Appeals for the Sixth Circuit has determined that summary judgment procedures are inconsistent with the appropriate standard of review in ERISA actions to recover benefits under 29 U.S.C. § 1132(a)(1)(B) since in a denial of benefits case, the district court must base is review of the merits solely upon the underlying administrative record, as to which there can be no factual dispute. *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609 (6th Cir.1998). This case, however, does not involve a denial of benefits and plaintiffs cannot bring their claims under § 1132(a)(1)(B) since they are no longer members of the Plan and therefore have no benefits due under the terms of the Plan. *See Kennedy v. United Healthcare of Ohio, Inc.,* 186 F.R.D. 364, 368 n. 1 (*citing Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). Plaintiffs' claims are therefore amenable to resolution on summary judgment. However, because this case has been fully briefed and is ripe for disposition on the merits, the Court will not separately address the summary judgment motion. Instead, the Court will proceed to determine this case on the merits based on defendants' memorandum submitted in support of the motion, the briefs submitted by the parties, and the parties' proposed findings of fact

and conclusions of law. The Court finds that a hearing on the merits is not necessary based on counsel's representations to the Court at the conference held in this matter on February 7, 2000. The parties informed the Court at the conference that they had no additional evidence to present, and neither party indicated in response to questioning by the Court that an oral hearing was necessary. Although the Court directed the parties to subsequently advise the Court if there were other evidentiary materials for the Court to consider so that a hearing could then be held, neither party has so advised the Court. Thus, by agreement of the parties, the Court will not hold an oral hearing but will decide the case on the record before it.

### Applicable Law

### I. Common Law Contract Claims

■ An employer and employee may contract for post-employment welfare benefits. *In re White Farm Equipment Company*, 788 F.2d 1186, 1190 (6th Cir.1986). Although common law contract claims are typically preempted by ERISA, 29 U.S.C. § 1144, if a retirement plan creates rights in excess of those established by ERISA, then those rights may be enforceable in contract under federal common law. *Cattin v. General Motors Corp.*, 955 F.2d 416, 425 n. 6 (6th Cir.1992). In such a case, the court must interpret the contract's terms. *In re White Farm*, 788 F.2d at 1190.

### II. Vesting of Benefits

■ ERISA distinguishes between pension plans and welfare plans. A medical insurance plan is a welfare plan. 29 U.S.C. § 1002(2). *See Musto v. American Gen. Corp.*, 861 F.2d 897, 901 n. 2 (6th Cir.1988). Welfare plans are specifically exempted from vesting requirements to which pension plans are subject. 29 U.S.C. § 1051(1). Employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Sprague*, 133 F.3d at 400 (citation omitted).

■ Employers may vest welfare benefits if they choose to do so. *Id.* at 400; *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir.1993). To determine whether welfare benefits have vested, the court applies principles of federal common law to ascertain the parties' intent. *Boyer*, 986 F.2d at 1005 (*citing Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1297–98 (6th Cir.1991)). In ascertaining the parties' intent, the court looks to the plan documents. *Id.* (*citing Musto*, 861 F.2d at 900–01). The written terms of the plan documents control. *Id.* (*citing Musto*, 861 F.2d at 910). Those terms cannot be modified or superseded by the employer's oral representations. *Id.; Sprague*, 133 F.3d at 403. However, if the plan documents are ambiguous as to a particular term, the court may use traditional methods of contract interpretation under federal common law in order to resolve the ambiguity, including drawing inferences and presumptions and examining extrinsic evidence. *Boyer*, 986 F.2d at 1005.

■ Until benefits have vested, an employer may modify or terminate them, whether or not the employer has reserved the right to do so. *Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243, 248 (6th Cir.1996) (*citing Curtiss–Wright v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995)). Vested benefits, however, are "forever unalterable". *Sprague*, 133 F.3d at 400. "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not be inferred lightly"; the intent to vest "must be found in the plan documents and must be stated in clear and express language." *Id.; Sengpiel*, 156 F.3d at 667.

■ In *Helwig*, the Sixth Circuit found that the following statements in the summary plan descriptions demonstrated an intent to vest benefits in employees when they retire:

When you are retired, your Health Care coverages ... are continued without cost to you. If you terminate employment with Kelsey–Hayes at age 65 or older for any reason other than discharge, all of your Health Care coverages ... will be continued for the rest of your life without cost to you.

*Id.* at 248. The Court found that cancellation clauses in master agreements which the SPDs designated as controlling could not support defendant's assertion that it never intended benefits to vest for two reasons. First, the plain language of the master agreements indicated that the cancellation clauses were included merely to reserve the right of the employer to end a commercial relationship. Second, promises made in SPDs are binding on the employer, regardless of conflicting language in a master agreement. *Id. (citing Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988)). The Court reasoned as follows:

What ... matters ... is the language actually given to the employees and upon which they could reasonably have relied ... the SPDs were the only documents which were written by the employer and were distributed to the employees ... it was reasonable for the Plaintiff employees in this case to believe that if they retired while the ... SPDs were in effect, they would be entitled to the specified health benefits promised at no cost to them. By retiring from Kelsey–Hayes, they indicated their intent to accept those benefits as they were then defined. In this circuit, under *Edwards,* companies are held to the promises they make in their SPDs.

*Id.* at 249. For these reasons, the Court of Appeals determined that the district court was reasonable in concluding that the documents indicated an intent by Kelsey–Hayes to create retirement health care benefits which would vest in the employees when they retired. *Id.* at 250.

The *Helwig* court distinguished another Sixth Circuit decision, *Boyer,* 986 F.2d 999, from the case before it on the ground that the defendant in *Boyer* had explicitly reserved the right to modify or terminate benefits in the SPD. The Court also distinguished the Sixth Circuit decision in *Gill v. Moco Thermal Industries, Inc.,* 981 F.2d 858, 860 (6th Cir.1992), wherein the court had relied on an unambiguous cancellation clause in an insurance agreement between an employer and an insurance carrier as an effective reservation of the employer's right to modify employee health benefits. The Court noted that plaintiffs had apparently relied on verbal assurances made by their employer in support of their equitable estoppel claim, and the insurance agreement containing the cancellation clause was the only available written source of guidance. *Id.* at 250. The Court also distinguished *International U.A.W. v. Yard–Man,* 716 F.2d 1476, 1480–82 (6th Cir.1983), which held that when the language in a Plan document is ambiguous, the Court may use extrinsic evidence to clarify the terms of the agreement. *Id.* at 251. The *Helwig* Court determined that an ambiguity in the SPD had not been created by the language of the master agreements. *Id.* at 251. Rather, the SPDs made clear, unambiguous promises of lifetime coverage and contained no valid provisions reserving the right to modify or terminate the benefits conferred. *Id.*

In *Sengpiel,* 156 F.3d at 667, the Sixth Circuit determined that language in the SPD to the effect that if an employee retired and was eligible for a pension he would continue to have the same health care coverage did not expressly guarantee lifetime benefits nor create an ambiguity as to whether such benefits were vested. *Id.* at 668. The court found no need to reach plaintiffs' arguments concerning extrinsic evidence because the plan documents were not ambiguous and did not express a clear intent to vest the welfare benefits. *Id.* at 668 n. 7.

### III. The Sprague Decision

Defendants rely on *Sprague* for their position that plaintiffs are not entitled to

continued health care benefits. In *Sprague,* defendant GM had provided the employees booklets containing summaries of the company's health insurance policies and programs. Among the representations made were that GM would provide basic health care coverages at GM's expense for an employee's lifetime. However, most of the booklets also put plan participants on notice of GM's right to change or terminate the health care plan at any time. Salaried employees who accepted early retirement were often asked to sign documents demonstrating their acceptance of the terms of the particular program under which they were retiring. In the course of explaining its special early retirement programs, GM made numerous oral and written representations about the health care benefits available to early retirees. Many of the early retirees also received documents summarizing applicable retirement benefits. These summaries often informed retirees that their health insurance would be paid by GM for life. The documents also sometimes put retirees on notice of GM's right to change benefits. A small number of retirees explicitly asked GM representatives about future changes to health care benefits and were told that benefits could be changed in the future.

Plaintiffs, a group of salaried retirees, challenged the legality of changes to the health care plan that took effect in 1988. They alleged that GM had bound itself to provide salaried retirees and their spouses basic health care coverage for life at GM's expense and that the right to such coverage vested upon retirement, so that the coverage could never be changed or revoked. Plaintiffs argued that although GM unambiguously reserved its right to amend or terminate the plan, language stating that the employees' health coverage would be paid for life and at "no cost" to them created an ambiguity within the summaries which must be resolved by extrinsic evidence. The Court rejected this argument, finding no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.

> To read this summary as saying that the plan can never be changed in such a way as to mandate retiree contributions for continued medical coverage is to read into the summary something its authors did not put there (a promise to provide lifetime 'paid up' medical insurance), while reading out of the summary something that clearly was put there (an express reservation of right to change the plan).

*Musto,* 861 F.2d 897. The *Sprague* court adopted the explanation offered by the Third Circuit in a similar case:

> [T]he promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plan under which those benefits are provided. *Id. (citing In re Unisys Corp. Retiree Med. Ben. ERISA Litigation,* 58 F.3d 896, 904 n. 12 (3d Cir.1995)).

The Court rejected plaintiffs' claims that the company violated the terms of its plan by terminating the benefits. The Court found that GM's failure to include in some plan summaries a notice of its right to change the plan does not trump the clearly-stated right to do so in the plan itself; GM was not required to disclose in the summary plan descriptions that plaintiffs' benefits were not vested; and neither the GM plan nor any of the summary plan descriptions stated or implied that the plaintiffs' benefits were vested. *Id.* at 401–402.

The Court also rejected the plaintiffs' theory that GM had bilaterally contracted with each retiree to vest benefits. The early retirees argued that the promises and representations which GM had made to them in connection with these programs and the documents they had signed creat-

ed contracts which were enforceable either as modifications to the general plan, as ERISA plans themselves, or as a matter of federal common law. The Court set forth the law governing this claim by noting that ERISA, 29 U.S.C. § 1102(a)(1), requires that every plan "shall be established and maintained pursuant to a written instrument" and further requires a written summary plan description that will "reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The Court stated that these requirements insure that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Id. (citing Curtiss–Wright*, 514 U.S. at 83, 115 S.Ct. 1223 (quoting H.Rep. No. 1280, 93rd Cong., 2d Sess. 297, reprinted in 1974 U.S.Code Cong. & Admin.News 5038, 5077–78)). These requirements further lend predictability and certainty to employee benefit plans, which serves the interests of both employers and employees. *Id.* In accordance with the well-established law, the Court determined that the plaintiffs could not invoke oral statements by GM personnel in order to modify the terms of the written plan and that the plan was not modified or superseded by the written statements of acceptance signed by some of the named plaintiffs. *Id.*

█ The Court also rejected the early retirees' claim that GM was estopped from enforcing the plan because it had misrepresented the plan's terms. The court recognized that equitable estoppel may be a viable theory in ERISA cases, at least with regard to welfare plans. The Court identified the following elements of an estoppel claim: "(1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so

intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment." *Id.* at 403 *(citing Armistead*, 944 F.2d at 1298). The court clarified that principles of estoppel cannot be applied to vary the terms of unambiguous plan documents, but can only be invoked in the context of ambiguous plan provisions. *Id.* at 404. The Court reasoned that a party's reliance can seldom if ever be reasonable if it is inconsistent with the unambiguous terms of plan documents furnished to the party, and that to allow estoppel to override the clear terms of plan documents would be to enforce something other than those documents. *Id.* Accordingly, the Court held that in the face of GM's clearly-stated right to amend, reliance on statements allegedly suggesting the contrary was not and could not be reasonable or justifiable, especially since GM never told plaintiffs that their benefits were vested. *Id.*

The Court in *Sprague* also dismissed the early retirees' claim that GM was in breach of the fiduciary duty it owed the retirees as administrator of their welfare plan. The Court acknowledged that an employer does not act as a fiduciary when it amends or terminates a plan. *Id.* at 404. The Court recognized, however, that an employer may act in a fiduciary capacity if it makes misrepresentations to employees about their benefit plan. *Id. (citing Varity Corp. v. Howe*, 516 U.S. 489, 497–504, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). The Court found that under *Varity Corp.*, GM may have acted in a fiduciary capacity when it explained its retirement program to the early retirees. Nonetheless, the Court found that GM did not commit a breach of any applicable fiduciary duty:

> In the first place, GM never told the early retirees that their health care benefits would be fully paid up or vested upon retirement. What GM told many of them, rather, was that their coverage was to be paid by GM for their lifetimes.

This was undeniably true under the terms of GM's then-existing plan.

Explanations of benefits 'tend to sound promissory by their very nature. While these explanations may state a company's current intentions with respect to the plan, they cannot be expected to foreclose the possibility that changing financial conditions will require a company to modify welfare benefit plan provisions at some point in the future.' *Gable*, 35 F.3d at 857.

GM's failure, if it may properly be called such, amounted to this: the company did not tell the early retirees at every possible opportunity that which it had told them many times before-namely, that the terms of the plan were subject to change. There is, in our view, a world of difference between the employer's deliberate misleading of employees in *Varity Corp.* and GM's failure to begin every communication to plan participants with a caveat.

*Id.* at 405. The Court noted that if an early retiree had asked about the possibility of the plan changing and had received a misleading answer, or if GM had provided misleading information about the future of the plan on its own initiative, a different case would have been presented. However, the Court did not believe that GM's representations of its current program could reasonably be deemed misleading. "GM having given out no inaccurate information, there was no breach of fiduciary duty." *Id.* at 406.

Five judges dissented either in whole or in part from the en banc decision of the Court in *Sprague*. Judge Lively found that the majority had read *Varity Corporation* "much too narrowly" in that the early retirees had bargained with GM for coverage and GM had a duty to be completely open and forthcoming with these employees. Judge Lively stated as follows:

Given that GM was seeking a new agreement from those employees that changed their previous expectations

about the time of their retirement, GM could not in equity remain silent if it intended to reserve a right to change or eliminate this important benefit in the future. It was misleading to tell these employees they would have company-provided health care throughout their lives while at the same time failing to advise them that it was claiming to reserve the right to withdraw the benefit after the employees accepted early retirement. Given the setting in which GM was presenting these employees with a new set of conditions relating to their retirement, GM had a fiduciary obligation to be completely open, with no undisclosed conditions *** This was a situation where silence was misleading. The reservations in the plan and descriptive materials all related to normal retirement. When, at GM's instigation, some employees were induced to retire early, they should have been told that these reservations applied to the new relationship created by early retirement if that was GM's intent. There was a fiduciary duty to inform them, and GM breached that duty. *Id.* at 408 (dissenting opinion).

Three dissenting judges identified the underlying question in *Sprague* as whether the retirees had a right to the lifetime free health care GM had promised them or whether GM could renege on its promise. *Id.* at 410. These judges found that GM had created a vested right to health care through its written promises, finding that to say that benefits are "for your lifetime" is tantamount to saying that GM cannot change the plan and that lifetime rights are vested rights. *Id.* at 412. The judges noted that the early retirees based their claims for vested rights to health care on the bilateral contracts they signed with GM and that the Sixth Circuit in *Musto v. American Gen. Corp.*, 861 F.2d 897 (6th Cir.1988) had left open the question of whether under ERISA employees could ever obtain vested rights in welfare plan benefits on the strength of written repre-

sentations outside the official plan document. The judges found that in *Sprague*, that question should be answered in the affirmative. *Id.* at 412–13. The judges determined that the early retiree contracts were best enforced under federal common law. The judges noted that the district court had argued that the agreements were not fully integrated, which opened the door to extrinsic evidence, and that the extrinsic evidence included written materials showing that GM had used "virtually every possible permutation of the words 'free lifetime health care' when presenting future benefits to employees." Based on this evidence, the judges opined that the district court's judgment that the early retirees had enforceable contracts should have been affirmed. *Id.* at 413.

The dissenters in *Sprague* also determined that the retirees were prime candidates for bringing an estoppel claim. The dissenters disagreed with the en banc majority's determination that "Reliance on repeated assurances of free lifetime health care, sometimes couched with timid caveats, from one of the largest corporations in the world was not justifiable." *Id.* at 413–14. The dissenters found that the early retirees' reliance was reasonable and justifiable. *Id.* at 413.

As to the breach of fiduciary duty claim, the dissenters stated that "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed." *Id.* (citing *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988)). They concluded that GM had violated its fiduciary duty because,

> When an employer establishes a right to lifetime health care benefits through vesting, as General Motors has done, the employer loses the unfettered freedom to amend or terminate the plan.

*Id.* at 415.

### IV. Fiduciary Obligations

 ERISA provides that "a fiduciary shall discharge his duties with re-

spect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciary must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "A fiduciary must give complete and accurate information in response to participants' questions …" *Drennan v. GM Corp.*, 977 F.2d 246, 251 (6th Cir.1992) (citing *Berlin*, 858 F.2d at 1163). Misleading communications to plan participants regarding plan administration may support a claim for breach of fiduciary duty. *Id.* at 251. The United States Court of Appeals for the Sixth Circuit has recognized that an employer/administrator's explanation of benefits may be subject to ERISA's fiduciary standards. *Sengpiel,* 156 F.3d at 666 (citing *Sprague,* 133 F.3d at 405).

### Opinion

#### I. Exhaustion of Remedies

 Defendants assert that plaintiffs cannot proceed with their claims in this Court because they have not exhausted their administrative remedies. Exhaustion of administrative remedies is a prerequisite to suit in federal court under ERISA. *Baxter v. CA. Muer Corp.*, 941 F.2d 451, 453 (6th Cir.1991) (per curiam) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991)). Defendants have not shown, however, that there were administrative remedies available to plaintiffs which they failed to pursue. Plaintiffs may therefore proceed with their claims in federal court.

#### II. Plaintiffs are not entitled to continued coverage under the written terms of the Plan

 In support of their ERISA claims, plaintiffs argue that they formed an early retirement contract with NuTone; a term

of the contract was that defendant NuTone could modify the early retirees' benefits only if it similarly modified the benefits of active employees; and plaintiffs and Nu-Tone agreed to vest the welfare benefits plan portion of the early retirement program to a level equal to that of active employees. Plaintiffs further contend that the medical insurance language is, at most, ambiguous and any ambiguities should be construed against defendants. Plaintiffs also claim that NuTone is bound by its October 1994 administrative decision interpreting the early retirees program as providing benefits identical to those received by active employees with the only changes being the same as changes implemented for active employees.

Plaintiffs' claims for benefits under ERISA based on the pertinent Plan provisions are without merit. The company did not violate the terms of the NuTone Health Plan referenced by the 1991 retirement letter when it terminated plaintiff's benefits. The Plan does not guarantee medical benefits for a specified period of time. Further, the Plan Summary in effect at the time the plaintiffs accepted early retirement expressly stated that Nu-Tone reserved the right to modify or discontinue any benefit for all or any class of employees. Nor does the Program itself guarantee benefits for a specified period of time. The Program states that early retirees currently enrolled in the company-sponsored medical plan would be eligible to continue coverage and that at age 65 they would be eligible for coverage under a Medicare supplement plan on a contributory basis. The Program does not guarantee that early retirees will receive the same health care benefits as active employees for a specified period of time and does not state an intent to vest in "clear and express language". *See Sprague*, 133 F.3d at 400. Any representations made by the company to plaintiffs purporting to guarantee them medical benefits for a specific time period cannot override the written terms of the Plan since the well-established law of the Sixth Circuit precludes oral modifications to written plan documents. Thus, plaintiffs are not entitled to health care benefits under the terms of the NuTone Health Plan.

The October 1994 administrative decision issued by defendant does not alter the Court's conclusion. That decision interprets the Plan and the July 1991 Program letter to mean that the early retirees would be eligible to participate in the same insurance plans as active employees until the time they become eligible for Medicare and that any changes to the Plan would be the same for early retirees as for active employees. While the decision is reasonable (see § IV, infra), it does not demonstrate a clear intent to vest health benefits in the early retirees.

### III. Plaintiffs' breach of fiduciary claims must fail

Plaintiffs claim that NuTone acted in a fiduciary capacity when communicating the Plan to its employees and breached its fiduciary duty by miscommunicating the terms of the plan to plaintiffs in the July 12, 1991 Program letter and in subsequent meetings, thereby entitling plaintiffs to relief under 29 U.S.C. § 1132(a)(3).

Plaintiffs' claims against defendants for breach of fiduciary duty must fail because NuTone was not a fiduciary with respect to the ERISA Plan on which plaintiffs base their claims for benefits. Those cases in which the federal courts have found a fiduciary obligation on the part of an employer to give complete and accurate information to employees in response to their inquiries involved employers who were also administrators of the plans in question. As such, the employers were bound by the obligations which ERISA imposes on plan administrators. NuTone was not an administrator of the Plan in this case. In representing to employees the terms of the Plan and the 1991 Program letter, NuTone was acting exclusively as an employer. NuTone was therefore not subject to the fiduciary obligations imposed under ERISA. For this reason,

plaintiffs are not entitled to judgment in their favor on their breach of fiduciary duty claims.

### IV. Common law contract claims

■ Plaintiffs' claims that defendants' promises are enforceable as a matter of federal common law must be rejected under the authority of *Sprague*. First, the Program letter cannot be construed as an ERISA plan since it does not satisfy the requirements for an ERISA plan set forth in 29 U.S.C. § 1102(b). *See Sprague*, 133 F.3d at 403. Defendants' promises are not enforceable either as a matter of federal common law or as a modification to the written Plan for the reasons stated above. The Plan does not guarantee benefits for any specified period of time. Nor does the Plan guarantee plaintiffs the same health benefits as active employees until plaintiffs reach normal retirement age. Plaintiffs cannot invoke oral statements by defendants to modify the written Plan so as to irrevocably provide the same health benefits for the early retirees as received by the active employees until age 65. Nor can plaintiffs' written offers of acceptance of the early retirement package override the terms of the written Plan pursuant to *Sprague*. Therefore, plaintiffs' common law contract claims must fail.

### V. Defendants are estopped from denying continued health coverage to plaintiffs

■ Plaintiffs claim that principles of equitable and promissory estoppel preclude defendant NuTone from modifying plaintiff's benefits in a manner not equal to that of active employees since NuTone misinformed plaintiffs about the benefits to which they were entitled and thereby induced plaintiffs to surrender their active employment to their detriment. The Court agrees and finds that plaintiffs are entitled to continued health coverage under the doctrine of equitable estoppel.

Initially, the Court finds that in contrast to the plan provisions in *Sprague,* the provisions at issue in this case are ambiguous with respect to the Window Retirees' right to continued health insurance coverage vis-a-vis the rights of active employees to continued health coverage. The 1991 Plan Summary which was in effect when plaintiffs accepted the early retirement package broadly states that "... the Plan may be changed or discontinued with respect to all or any class of employees." Defendants have not submitted any portions of the Plan Summary which identify Window Retirees as a separate class of employees or which address the provision of benefits to Window Retirees separately from the provision of benefits to active employees. In the absence of any such provisions, the SPD in effect at the time the plaintiffs accepted early retirement must be deemed ambiguous with regard to the question of whether the health care benefits of Window Retirees could be discontinued if benefits for active employees were not likewise discontinued.

Further, the Court finds that each of the elements of an equitable estoppel claim is satisfied in this case. First, there was conduct or language amounting to a representation of material fact. It is undisputed that both James Rankin and Marge Poole represented to plaintiffs that the Window Retirees would have the same health insurance as active employees and that the only changes that would be made would be the same as those made for active employees. The representations were material in that they related to a critical aspect of the early retirement program and were substantially likely to mislead a reasonable employee in making an adequately informed decision to accept early retirement.

Second, NuTone was aware that it had reserved the right to modify or terminate benefits in the Plan, and that it had not made any type of guarantee in the Plan that benefits for the Window Retirees would be equal to those provided to active employees and would continue so long as benefits continued for active employees.

Third, NuTone intended that plaintiffs act on its representations or plaintiffs reasonably believed defendant so intended. Rankin has stated that he informed Williams that he would never be able to "sell" a separation package that did not include continuing health insurance until either death or Medicare eligibility, and Williams eventually agreed with this approach. It was apparent from plaintiffs' questions to company representatives that continued health coverage was an important factor in the decision whether to accept early retirement, and plaintiffs have submitted affidavits to that effect. The third element of the equitable estoppel doctrine is satisfied.

In order to satisfy the fourth equitable estoppel element,

> The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.

*Trustees of the MI Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587, 2000 FED App. 0128P (6th Cir.) (slip op.) *(quoting Heckler v. Community Health Services,* 467 U.S. 51, 59 n. 10, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). The fourth element in satisfied here. While plaintiffs knew or should have known that their health coverage could be terminated, they did not know and should not have known that their health coverage could be terminated if health coverage was continued for active employees. The reservation of the right to terminate benefits for any class of employees in the 1991 SPD was not sufficient to put plaintiffs on notice of the latter possibility. The reservation of rights clause does not address specific conditions for terminating benefits and the clause can be construed as being consistent with the guarantee of equal benefits. Under these particular circumstances, NuTone could not equitably guarantee the Window Retirees that they would continue to receive benefits to age 65 so long as active employees continued to receive such benefits, and subsequently attempt to rely on a general reservation of rights clause which predates that guarantee in order to render that guarantee absolutely meaningless.

In so finding, the Court notes that this case does not present the same situation as that presented in *Sprague.* Like the *Sprague* plaintiffs, plaintiffs here were or should have been aware that their health coverage could be discontinued. However, unlike the plaintiffs in *Sprague,* they received a guarantee which was consistent with the reservation of rights and on which they were entitled to rely: i.e., benefits could be discontinued for plaintiffs only if they were likewise discontinued for active employees. In light of this critical distinction, *Sprague* does not compel a finding in defendant's favor on plaintiffs' equitable estoppel claims.

Fifth, unlike the employees in *Sprague,* plaintiffs' reliance on the misleading information was reasonable since Rankin did not negate the company's right to modify or terminate benefits. Rather, he represented to plaintiffs that their health care benefits could be terminated only if and when the benefits of active employees were likewise terminated. Plaintiffs were entitled to rely on this representation despite the company's reservation of its right to amend the Plan. Their reliance is particularly reasonable in light of the language of the Program letter. While the letter does not guarantee benefits for a specific period of time, neither does it advise plaintiffs of the possibility that their benefits could be terminated even if active employees continued to receive medical benefits.

The language of the Program letter can only be reasonably construed to mean that if the health care benefit features and contribution rates were to be modified in some respect for active employees, they would be modified in a like respect for retired employees. Plaintiffs concede that the benefits themselves were subject to change, and Rankin's representations did not rule out the possibility that the early retirees' medical benefits could be modified or terminated. What his representations did rule out is the possibility that the early retirees' benefits could be modified or terminated if active employees' benefits were not similarly modified or terminated. Thus, although NuTone reserved the right to amend the Plan in the SPD, plaintiffs were entitled to rely on Rankin's misrepresentations that their medical benefits would be modified or terminated only if and when the active employees' benefits were modified or terminated.

The 1994 administrative decision demonstrates the reasonableness of plaintiffs' reliance on representations that they were entitled to the same health care benefits as active employees until such time as they became eligible for Medicare. In the Program letter and by their representations, defendants offered plaintiffs a package whereby they would be eligible for the same benefits as active employees without restricting their offer to benefits active employees would receive after they retired. In the administrative decision, the Appeals Committee construed the offer to mean plaintiffs would receive the same benefits active employees received while they remained actively employed.

For these reasons, the Court finds that plaintiffs are entitled to a finding in their favor on their equitable estoppel claims insofar as plaintiffs seek to receive health care benefits equal to those of active employees until either the age of 65 or the date of their eligibility for Medicare or any program substituting for Medicare, whichever is earlier. Plaintiffs are not entitled to receive supplemental health insurance from NuTone subsequent to age 65 or the date of their eligibility for Medicare or any program substituting for Medicare since it is undisputed that active employees are no longer entitled to health insurance benefits in retirement.

## VI. Plaintiff's remaining claims

Counts V, VI, and VII of the complaint do not allege independent claims but essentially reassert plaintiffs' claims that defendants breached a written and implied contract and that their conduct violates ERISA. As the Court has resolved these claims, the Court finds it unnecessary to separately address Counts V, VI, and VII.

## VII. Conclusion

For the reasons stated above, plaintiffs are entitled to judgment in their favor on their equitable estoppel claims. The Court hereby **ORDERS** that a **PERMANENT INJUNCTION** shall issue. Defendants are required to provide plaintiffs with the same health care coverage as that provided to active employees until age 65 or the date of their eligibility for Medicare or any program substituting for Medicare, whichever is earlier.

**IT IS SO ORDERED.**